# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **FELLAN WHITAKER** | **CIVIL ACTION NO. 04-2208** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **SAINT-GOBAIN CONTAINERS, INC.** | **MAG. JUDGE JAMES D. KIRK** |

## RULING

This is an employment discrimination action brought by Plaintiff Fellan Whitaker ("Whitaker") against his former employer, Saint-Gobain Containers, Inc. ("SGCI"). Whitaker alleges that he was subjected to race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

On November 18, 2005, SGCI filed a Motion for Summary Judgment [Doc. No. 14] seeking dismissal of all Whitaker's claims. On December 1, 2005, Whitaker filed a Memorandum in Opposition to the Motion for Summary Judgment [Doc. No. 16]. On December 15, 2005, SGCI filed a Reply in Support of its Motion for Summary Judgment [Doc. No. 19].

For the following reasons, SGCI's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

## I. FACTS AND PROCEDURAL HISTORY

SGCI is a manufacturer of glass containers for the food and beverage industry. SGCI is headquartered in Muncie, Indiana, and operates eighteen plants across the United States, including a facility in Ruston, Louisiana. Whitaker was employed in the Ruston facility from January 22, 1993, until April 25, 2002. Until February 1, 1999, Whitaker only worked as a

palletizer operator in the packaging department. However, beginning February 2, 1999, until his termination, Whitaker also held a bid as an apprentice IS machine operator ("apprentice operator") in the forming department.[1] If Whitaker was not scheduled to work as an apprentice operator, he would perform his duties as a palletizer operator.

While working at SGCI, Whitaker was represented by the Glass, Molders, Pottery, Plastics & Allied Workers International Union, AFL-CIO, CLC, Local No. 253 ("GMP"). The terms of Whitaker's employment were governed by a bargaining agreement between SGCI and GMP. The collective bargaining agreement ("CBA") provided Whitaker with an assortment of employment rights, including the right to grieve any discipline or discharge notice.

In addition to the CBA, an Attendance Control Policy ("ACP") governed Whitaker's employment. The ACP requires SGCI employees to report an absence by telephone 24 hours in advance or, in an emergency, as soon as possible before the start of his or her shift. Under the ACP, each day of absence is counted as one occasion. However, each day of absence that an employee fails to report by calling the Ruston facility (referred to as a no-call or no-show) is counted as three occasions. Under the ACP, an employee receives the following discipline for the corresponding number of occasions in a twelve-month period of time:

    3 occasions = oral warning;
    6 occasions = written warning;
    9 occasions = 3 day suspension;
    12 occasions = 3 day suspension pending discharge; and
    3 suspensions in a twelve month period = 3 day suspension pending discharge.

[Doc. No. 14, Exh. 7].

---

[1] Apprentice operators primarily perform two tasks. They fill in for machine operators who are on vacation and perform the role of "utility" by keeping the work area swept and clean, keeping sufficient supplies on hand, and performing other miscellaneous tasks.

James Bradford ("Bradford") was the Ruston facility forming department manager at the time Whitaker was an apprentice operator. Bradford prepared a weekly schedule for the forming department identifying which of the four shifts each apprentice operator would work. Bradford posted the schedule in the forming department at the beginning of the week the work was to be performed.

In addition to the posted schedule, Bradford provided each apprentice operator with a personal work schedule for the week and required the employee to sign the work schedule. Whitaker signed his work schedule for the week of April 15, 2002, through April 21, 2002. The schedule indicated that he was to work the third shift on April 15, 2002, through April 17, 2002, and the first shift on April 20 and 21, 2002.

Although Whitaker worked on April 15, 16, and 17, 2002, he did not report for work on April 20 and 21, 2002. Whitaker alleges that Bradford told him that he was going to change the apprentice operator schedule because Whitaker was inexperienced, and Bradford did not want him to work the first shift on April 20 and 21, 2002. Whitaker claims that Bradford's remarks insinuated that Whitaker did not need to work on April 20 and 21, 2002. He also testified in his deposition that he saw the final posted schedule in the supervisor's office and that on the final schedule he was not supposed to work on April 20 and 21, 2002. As a result, Whitaker was absent and did not call SGCI either day.

When Whitaker returned to work on April 22, 2002, SGCI gave him a written warning indicating that he had incurred 9.5 occasions as of April 20, 2002, and, therefore, was subject to a three-day suspension pursuant to the ACP. At this same meeting, SGCI also gave him a written warning indicating that he had incurred 12.5 occasions as of April 21, 2002, and, therefore, was

3

subject to a three-day suspension pending discharge pursuant to the ACP and CBA.

Whitaker served his three-day suspension on April 22, 23, and 24, 2002, and his employment was terminated on April 25, 2002.

On January 30, 2003, Whitaker filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 270-A3-00673 ("charge"). Whitaker checked only the "retaliation" box on the EEOC charge.[2] On August 4, 2004, the EEOC issued a notice of right to sue. On October 26, 2004, Whitaker filed a Complaint against SGCI asserting claims of race discrimination and retaliation.

SGCI contends that Whitaker's Complaint is limited to the following claims:

> (1) SGCI failed to contact Whitaker when he was absent from work on April 20 and 21, 2002, because he is African-American, in violation of Title VII;
>
> (2) SGCI refused to reinstate Whitaker after it terminated his employment for violating the ACP because he is African-American, in violation of Title VII; and
>
> (3) SGCI retaliated against Whitaker in violation of Title VII when it "devised a work schedule scheme" that resulted in the termination of his employment under the ACP.

*See* [Doc. No. 14, p. 7].

On November 18, 2005, SGCI filed a Motion for Summary Judgment [Doc. No. 14] arguing that Whitaker's claim of race discrimination was not contained in his underlying charge of discrimination filed with the EEOC and that he is unable to maintain his retaliation claim because he cannot prove the necessary link between his protected activity and alleged adverse

---

[2]The Court notes that Whitaker previously filed a lawsuit against SGCI on January 30, 2002, in the Third Judicial District Court, Lincoln Parish, Louisiana. In the lawsuit, Whitaker claimed that SGCI discriminated against him because of his race when SGCI allegedly removed him from his palletizer operator position. Whitaker did not claim that he had suffered race discrimination as an apprentice operator.

4

employment action. On December 1, 2005, Whitaker filed a Memorandum in Opposition [Doc. No. 16] to the Motion for Summary Judgment. On December 15, 2005, SGCI filed a Reply [Doc. No. 19].

With full briefing by all parties completed, the Court is now prepared to rule on the Motion for Summary Judgment.

## II. Law and Analysis

### A. Standard of Review

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

**B. Title VII and the EEOC Charge of Discrimination**

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).

A Title VII complaint may include only those claims of discrimination that are reasonably related to, or could be expected to grow out of, an investigation of the allegations contained in the underlying charge. *See Thomas v. Texas Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000); *see also Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970) ("[i]t is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."). When determining whether a claim falls within the scope of an EEOC charge, courts "begin with the obvious proposition that the crucial element of a charge of discrimination is the factual statement contained therein." *See Sanchez*, 431 F.2d at 462.

Whitaker's EEOC charge reads:

On April 22, 2002 I was discharged from my position. I have been employed with Respondent [SGCI] since --------- and classified as --------- . I was a full-time employee. The company employs more than 500+ employees at this facility.

--------- , Foreman stated I was discharged because for [sic] a no show no call.

*I believe I was discharged in retaliation for filing previous charges of racial*

6

*discrimination #270981001 and 270A01860 which I filed suit in January 2002 in violation of Title VII of the Cviil [sic] Rights Act of 1964*, as amended, [sic] In addition, I was approached by the company Foreman about him changing my work schedule and misled me to believe that he did by posting an incomplete schedule with my name in only three days and given a no-show or no call-off work on a schedule that I was told was to be changed, but was not nor was I given any notice of it.

*See* [Doc. No. 14, Exh. 10, EEOC Charge No. 270A300673 (emphasis added)].

SGCI contends that Whitaker's factual statement in the EEOC charge "makes no mention, even remotely, of any discriminatory conduct based on race." [Doc. No. 14, p. 9]. SGCI also contends that Whitaker's claim of race discrimination fails because he checked only the box marked retaliation, and his claim of race discrimination could not reasonably be expected to grow out of the charge of retaliation.

Whitaker contends that his claim of race discrimination is reasonably related to the investigation regarding retaliation because it involves the same factual events surrounding his termination from employment. Whitaker also contends that an employee at the EEOC prepared the formal charge, and Whitaker merely signed it.[3]

The Court finds that Whitaker has not created a genuine issue of fact as to whether his claim of race discrimination is reasonably related and/or could be expected to grow out of an investigation of the allegations in the charge. While Whitaker argues that his two claims are related because he was terminated from his employment, he has not provided any evidence to the Court that demonstrates his claim of race discrimination should reasonably have been expected to

---

[3]Whitaker appears to argue that because he did not prepare the charge, the EEOC made a mistake by not adding his claim of race discrimination. However, Whitaker has provided no evidence to the Court to suggest that the EEOC made an error. The Court also notes that the EEOC regularly assists employees in preparing and filing charges of discrimination. *See* 29 C.F.R. § 1601.6.

7

grow out of his retaliation claim. *See Thomas*, 220 F.3d at 394-95 (denying an attempted addition of a race claim to a complaint based upon an EEOC charge of sex discrimination even though the claim shared the same adverse action); *O'Brien v. Lucas Assoc. Pers., Inc.*, 127 Fed. Appx. 702, 708 (5th Cir. 2005) (affirming district court's dismissal of hostile work environment claim because the plaintiff alleged only Title VII violation for discharge in the EEOC charge); *see also Gomez v. Orleans Parish Sch. Bd.*, No. Civ. A. 04-1521, 2005 WL 2050285, at *5-6 (E.D. La. Aug. 11, 2005) (dismissing claim of race discrimination because retaliation was the only box checked on the EEOC charge, plaintiff's charge stated "I believe I was discriminated in *retaliation*. . .," and plaintiff did not provide any evidence of race discrimination in her EEOC charge) (emphasis in original); *Ashford v. Harvey*, No. Civ. A. 04-2214, 2006 WL 461966, at *9 (E.D. La. Feb. 23, 2006). Therefore, SGCI's Motion for Summary Judgment on Whitaker's race discrimination claim is GRANTED, and it is DISMISSED WITH PREJUDICE.

**C.    Retaliation**

In order to establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) that he engaged in activity protected by law;  (2) that an adverse employment action occurred;  and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision. *Shackleford v. Deloitte & Touch, LLP*, 190 F.3d 398, 407-408 (5th Cir. 1999);  *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 41 (5th Cir. 1992). The establishment of a *prima facie* case gives rise to an inference of retaliation. *Shackleford*, 190 F.3d at 408.

To overcome this retaliatory inference, the defendant must produce evidence of a legitimate non-retaliatory purpose for the employment action. *See Gee v. Principi*, 289 F.3d 342,

345 (5th Cir. 2002).

Finally, if the defendant satisfies its burden of production, the plaintiff must prove that the employer's stated reason for the adverse action was merely pretext for the real, discriminatory purpose. *Id*.

Whitaker arguably engaged in protected activity by previously filing a lawsuit against SGCI on January 30, 2002, alleging race discrimination. Thus, he has met his burden as to the first prong of his *prima facie* case. In addition, Whitaker has met his burden as to the second prong because he was terminated from his employment on April 25, 2002. However, SGCI contends that Whitaker cannot meet his burden on the third prong in demonstrating that there is a causal connection between the adverse action and his protected activity.

To establish the causation prong of a retaliation claim, "the employee should demonstrate that the employer knew about the employee's protected activity." *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001). "If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity." *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 n.6 (5th Cir. 2003). The standard for establishing the causation element is a much less stringent standard than a but for causation standard. *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 191 (5th Cir. 2001).

SGCI argues that Whitaker has no evidence to suggest that Bradford or any other decision maker had knowledge of his previous lawsuit prior to his termination. SGCI also argues that Bradford had no knowledge of Whitaker's lawsuit prior to allegedly manufacturing the weekly schedule after his termination.

9

Whitaker disagrees and presents evidence that Julie Curtis ("Curtis"), SGCI's Human Resource Manager, was aware of Whitaker's prior discrimination charges and lawsuit. Whitaker also presents evidence that Curtis admitted in response to the EEOC investigation that she played a role and/or was a decision maker in Whitaker's termination. *See* [Doc. No. 16, Exh. R].

The Court finds that Whitaker has presented sufficient evidence to satisfy the causal connection between his protected activity and adverse employment decision. Since the Court finds that Whitaker has satisfied his prima facie case, the burden of production now shifts to SGCI to produce evidence of a legitimate non-retaliatory purpose for terminating Whitaker.

SGCI argues that it fired Whitaker for a legitimate non-retaliatory reason: he had incurred over 12.5 occasions of absences under the ACP. The Court finds that SGCI has met its burden of production. Because SGCI has proffered a legitimate non-retaliatory reason for the challenged employment action, the burden shifts back to Whitaker to demonstrate the proffered rationale is merely pretext for retaliation. Whitaker must present substantial evidence in order to withstand a motion for summary judgment. *See Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).

Whitaker argues that he can establish pretext because SGCI's reason for termination is based upon false documentation. Although Whitaker admits he signed a schedule showing that he was to work the first shift on April 20 and 21, 2002, he has testified that this schedule was not final. According to Whitaker, his supervisor, Bradford, told him that the schedule would be changed because Whitaker was an inexperienced supervisor, and Bradford did not want him to work the first shift. After this conversation, Whitaker allegedly checked Bradford's office and verified that "the final posted work schedule did not have his [Whitaker's] name listed to work

April 20, 2002 and April 21, 2002." *See* [Doc. No. 16, p. 5]. Whitaker further argues that he never saw the unsigned schedule produced by SGCI in this lawsuit. According to Whitaker, this is not the schedule that was posted, and he argues that Bradford created it after his termination. In support of his theory, Whitaker points out that the weekly schedule had his name hand written on April 21, 2002, indicating that it was added after the schedule was typed. He also testifies that even if the schedule was not created post-termination, he was never notified of the change.

The Court finds that Whitaker has presented a genuine issue of material fact as to whether SGCI's reasons for termination are pretext for retaliation. In these circumstances, it is perfectly reasonable for a fact finder to reach different conclusions regarding the veracity of evidence presented by Whitaker and SGCI. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) ("a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."); *see also Gee*, 289 F.3d at 348 (citing *Reeves*, 530 U.S. at 147, "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation.").

Therefore, the Court finds the evidence of pretext, combined with Whitaker's *prima facie* evidence, in its totality, is sufficient to support a finding that summary judgment is unwarranted at this time. SGCI's Motion for Summary Judgment on Whitaker's retaliation claim is DENIED.

## III. CONCLUSION

For the foregoing reasons, SGCI's Motion for Summary Judgment [Doc. No. 14] is GRANTED IN PART AND DENIED IN PART.

SGCI's Motion for Summary Judgment on Whitaker's race discrimination claim is

GRANTED, and it is DISMISSED WITH PREJUDICE.

SGCI's Motion for Summary Judgment on Whitaker's retaliation claim is DENIED.

MONROE, LOUISIANA, this 30th day of March, 2006.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE